Dear Commissioner Drennen:
You requested the opinion of this office concerning a past audit finding stating that the Division of Administration ("DOA") and the Office of the State Treasurer ("STO") made an unauthorized transfer of a seed advance from the Artificial Reef Development Fund ("ARDF") to the Conservation Fund. Originally, the seed for the Conservation Fund was provided by the General Fund. During the fiscal year, the General Fund was repaid and the advance was made from the ARDF to the Conservation Fund.
The finding cited R.S. 49:308.4 and Op.Atty.Gen. 93-259 and stated that the treasurer is "not authorized to borrow from one special revenue fund for the benefit of another special revenue fund." R.S. 49:308.4(A) states "The treasurer is authorized to use, loan, or borrow any available state cash in the state treasury from any fund to make payments from the state general fund that are authorized by law." The only exceptions listed are the Louisiana Education Quality Trust fund and the Transportation Trust Fund. Op. Atty Gen. 93-259 pertained to the New Orleans Aviation Board borrowing money from the TIMED account for projects at the New Orleans International Airport and states that "there is not statutory authorization to allow NOAB to borrow the money with intent to repay the TIME Account. Furthermore, such borrowing may violate the provisions of Article VII, Section 14 of the Louisiana Constitution."
You advised that the transaction was processed as the result of a temporary cash flow deficit. You contend that the ARDF is subject to interfund borrowing under R.S. 49:308.4, which allows the General Fund to make continuing, authorized payments. Furthermore, you contend that this transaction was authorized since: (i) the monies from ARDF were not needed during the period of time the advance was outstanding; (ii) both ARDF and the Conservation Fund are special funds under the administration of the Department of Wildlife and Fisheries (the "Department"); (iii) the Department agreed with the transaction; (iv) these funds cannot be appropriated to any other department; and (v) the balances of the two funds do not revert to the General Fund at year end.
You ask whether R.S. 49:308.4 allows interfund borrowing between special funds maintained in the state treasury unless specifically excluded?
R.S. 39:308.4 states in pertinent part as follows:
 A. The treasurer is authorized to use, loan, or borrow any available state cash in the state treasury from any fund to make payments from the state general fund that are authorized by law . . . (Emphasis added)
In this instance, a $2.5 million seed advance was required by the Conservation Fund, which advance was made by the General Fund, which action is authorized by the Ancillary Appropriations Act which appropriates funds to the Department of the Treasury for the seeding of appropriations as authorized and approved by the commissioner of administration. The General Fund was in a deficit posture. In order to relieve $2.5 million of the General Fund deficit, the seed advance was paid back to the General Fund from the ARDF. Both the Conservation Fund and the ARDF are under the administration of the Department of Wildlife and Forestry, the Department was in agreement with the transaction and the ARDF did not need to use the monies during the period of the seed.
The question arises as to whether the seed could be repaid to the General Fund by the ARDF or whether the General Fund should be out the $2.5 million until the Conservation Fund had sufficient monies to repay the General Fund.
We have reviewed the laws and constitutional provisions relevant to this issue, and we can find no specific authorization nor any specific prohibition against interfund borrowing between two dedicated funds under the administration of the same department to make seed advances as you described. It is the opinion of this office that as the transaction is not prohibited by law, it is permissible as part of the ordinary course of government.
Interfund borrowing has occurred since at least 1983. It wasn't until 1988 that legislation was enacted concerning interfund borrowing. The statue was enacted by the legislature in recognition of unavoidable periodic mismatches or differences in the cash flow of the State and to provide a financial mechanism to effectively utilize all of the State's resources, including these special funds, to efficiently manage the cash flow and prevent the timing mismatch disruptions that would otherwise naturally occur. The legislation that was enacted only addresses borrowing to pay general fund expenditures. It does not address the General Fund being used to cover a cash flow problem in a dedicated fund. In this specific instance, utilizing excess funds within one special revenue fund to cover a shortfall in another special revenue fund, both of which are restricted to a single departmental use and which was approved by the Department, negated the necessity to utilize General Fund resources. Had interfund borrowing not been used in this instance and because of the negative cash posture of the General Fund, the authorized seed payment to the Conservation Fund from the General Fund could not have been continued or other authorized payments from the General Fund may not have been made as needed during this period.
As to the audit finding citing Op.Atty.Gen. 93-259, the opinion pertained to interfund borrowing under the TIMED program and is not pertinent to the question at issue.
Trusting this adequately responds to you request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
DATE RELEASED: February 19, 2003